### SAMUEL VIALL & others *v.* ROBERT T. SMITH.

That a child was called and treated by a man and his family as his daughter, is presump-
tive proof of her legitimacy, and is admissible as evidence of the same, although the
town registry of the father's marriage, compared with that of the daughter's birth,
speaks a different language.

Where a town clerk, acting under the statute "for registering marriages, births, and
burials," contained in the Digest for 1798, p. 486, recorded the fact of a marriage at a
certain time, instead of recording the certificate to the fact of the official who joined
the persons in marriage; *Held,* that a certified copy from such a registry was no proof
of the time of marriage, unless traced by evidence to information furnished by the
persons married or by members of their family.

A declaration by a father concerning his daughter, "that unless he made a will, Louisa
could get nothing by law," is admissible as evidence tending to prove her illegitimacy;
it being for the jury to pass upon the sense in which the father used the expression.

EJECTMENT by the plaintiffs, as heirs at law of Ebenezer Smith, late of Barrington, to recover one undivided sixth part of two tracts of land in said Barrington, of which the said Ebenezer died seised, intestate.

At the trial of the case under the general issue at the March term of this court, for the county of Bristol, 1859, before the chief justice, with a jury, it appeared that the plaintiffs, who were children and heirs at law of Louisa Viall, claimed by inheritance, through their said mother as a child of said Ebenezer, one undivided sixth part of his real estate. The seisin of said Ebenezer, and the death and intestacy of said Ebenezer

and said Louisa, being admitted, the plaintiffs, to support the issue on their part, called Lewis B. Smith, as a witness to prove that said Louisa, the mother of the plaintiffs, was brought up in the family of said Ebenezer, and was treated and spoken of by him and the other members of his family, as his daughter; whereupon the defendant produced and exhibited to the court, a certified copy of the record of marriages, births, and deaths, as recorded on pages 18, 19, and 20 of Book No. 2 for recording marriages, births, and deaths in said town of Barrington. On the nineteenth page of said book appeared the following : " Ebenezer Smith and Miss Martha Townsend were married September 4, A. D., 1800, by Rev. Samuel Watson. Louisa, their daughter, was born Saturday, August 23, 1800."

Upon the ground that said record was conclusive evidence of the times of the marriage of said Ebenezer and of the birth of said Louisa, the defendant objected to the testimony of the said Lewis B. Smith; but the court overruled the objection, and admitted the testimony of said Smith, and of other witnesses to the same effect, to pass to the jury.

To rebut the aforesaid evidence of the plaintiffs, and to prove that said Louisa was not the legitimate daughter of the said Ebenezer, but was born before his marriage with the mother of said Louisa, the defendant offered to prove the declarations of said Ebenezer, made in his lifetime, to the effect, " that unless he made a will, the said Louisa could get nothing by law; " but the court refused to allow proof of such declarations to pass to the jury.

The court further charged the jury, that the certified copy from the record of marriages in Barrington, which had been read to the jury, was not evidence tending to prove the fact or date of the marriage of said Ebenezer, because the original, as appeared from said copy, was not kept in compliance with the provisions of the statute in relation to the record of marriages then in force, and was not a record within the meaning of said statute ; and that said copy did not tend to rebut the proof of the legitimacy of said Louisa submitted by the plaintiffs.

Under these rulings and instructions, the jury having returned

a verdict for the plaintiffs, the defendant now moved for a new trial, upon the ground that the same were erroneous in matter of law.

*Payne*, for the defendant.

The record should have been held conclusive until impeached. Though not a formal, it is a substantial compliance with the statute. Though not good as a record, it is competent evidence upon the same principle that inscriptions, &c., are used. 1 Greenl. § 105. The declaration of the father should have been admitted. 1 Greenl. §§ 103, 104, 134, and cases cited in the note.

*Potter*, (with whom was *Blake*,) for the plaintiffs.

1. The evidence that Louisa was treated and called the daughter of Ebenezer Smith, both by him and his family, was properly admitted.

2. The proof of the declarations of Ebenezer Smith, offered by the defendant, was not legally competent.

3. The certified copy from the records of marriages in Barrington showed that no record was kept in compliance with the then existing statute, for the registering of marriages, births, and burials. Dig. 1798, pp. 486, 487.

AMES, C. J. We see no reason to doubt the admissibility of the evidence offered by the plaintiffs to prove that their mother was the legitimate daughter of Ebenezer Smith, to wit, that she was called and treated as his daughter, both by him and by his family. Evidence from reputation in the family is clearly good upon a question of pedigree. *Goodright* d. *Stevens* v. *Moss*, Cowp. 591; *Vowles v. Young*, 13 Ves. 145–148; *Whitelocke* v. *Baker*, Ib. 514; *Doe* d. *Northey* v. *Harvey*, 1 Ry. & M. 297; *Jenkins v. Evans*, 10 Ad. & Ell. (N. s.) 314; *Jackson* v. *Browner*, 18 Johns. R. 39. Nor is this evidence objectionable if the registry of marriages and births in the town of Barrington speaks a different language, upon the notion that the latter, as record evidence, is, as long as it exists, the exclusive evidence upon this subject. Such a registry, though it may have more force, is of no higher legal degree, as evidence, than that which it was in this case invoked to exclude; being admissible, as a public document, upon the mere *primâ facie* presumption of its correctness, because kept in the course of his official duty

by a person accredited by the public. 1 Starkie on Ev. 196, 300, (8th Am. ed.); *Jackson* v. *Boneham*, 15 Johns. R. 228. Indeed, as a registry of the marriage, we are of opinion that the registry here produced, because not such as the law required, has no force whatever as evidence. The statute in relation to such registries then in force, (Dig. 1798, pp. 486, 487,) required, by its *first* section, that all persons having authority to join persons in marriage should, immediately after the solemnization thereof, give a marriage certificate in a prescribed form; and by its *second* section, that the persons married should within a month, subject to a penalty for neglect, have the certificate registered in the town clerk's office of the town where the marriage was celebrated. The evidence of the marriage here provided is the certificate of the person authorized by law to join persons in marriage; and the registry was designed to perpetuate and make known this evidence. The marriage registry differs from that of births and deaths, required by the *third* section of the same statute to be kept by the town clerk, upon information to be furnished to him, in case of children, by the parents of the children born or dying. The town clerk of Barrington, whose registry is here produced, seems to have confounded these requirements; and to have recorded a marriage in the same manner that he did a birth or death — as a fact occurring within his own knowledge, or of which he is informed by others, or even by mere rumor. Certainly, this is not the kind of marriage registry which the law appointed him to keep, substituting, as it does, his own declaration, for the record of an official certificate. Such a document is presumed to be correct merely because kept by a public official in the course of his official duty; and if not so kept, how can such a presumption arise? Upon this ground, therefore, if the former was wanting, a marriage registry thus kept could not stand in the way of family repute, so as to exclude it as evidence.

It is suggested, however, that such a registry, though not kept as required by law, may be admitted as evidence of pedigree, upon the same principle that inscriptions upon monuments, or engravings upon rings are; and that is, as explained by Lord Erskine in *Vowles* v. *Young*, *supra*, that the family would not

Viall & others *v.* Smith.

permit such an inscription, if it were erroneous, and the person would not wear the ring, with a falsehood engraven upon it. The difficulty with this suggestion is, that it assimilates a town-clerk's entry, as a source of presumed family repute, with an inscription upon a family monument, or an engraving upon a family ring; that it confounds that which upon its face is the act of a stranger, with that which usually is, and therefore, in the absence of proof to the contrary, is presumed to be, the act of the family. No doubt, if this declaration of the town-clerk of Barrington, as to the time of Ebenezer Smith's marriage, was traced by proof to information furnished by him or by the members of his family, such sanction, by way of family repute, would render it admissible as evidence. But without such sanction, why is his written declaration not under oath — not made in the course of official duty, because not such as the law authorizes him to make — to be received in evidence, more than that of any other stranger to the family? In *May* v. *May*, 2 Stra. 1073, a book of daily entries of chris tenings, out of which the parish-clerk, once in three months, posted his entries into the parish registry, was rejected, when offered to prove that the plaintiff was illegitimate, by the letters " B. B." for " base-born " being added to his name; no such mark being against his name in the parish registry. Upon this case Mr. Starkie remarks, " If the entry in the day-book, which represented the plaintiff to be illegitimate, *had been made under the directions of the reputed father and mother,* the evidence would, it seems, have been admissible, as the declaration of a deceased parent. In the absence of such evidence, it appeared to be nothing more than a private memorandum, made for the purpose of assisting the clerk to make up the registry." 1 Starkie on Evid. 298, n. *h*, (8th Am. ed.); see also *Duins* v. *Donovan,* 3 Hag. 301. In no other light than as a private memorandum, can we regard the written declaration of the town-clerk of Barrington, here produced, as to the time of the marriage of Ebenezer Smith. Since he does not profess to record what alone by law he was authorized to record, what he has written must be regarded as his personal, and not his official act; and is not admissible in evidence without accompanying proof to connect

it with information furnished by the family. As no such evidence accompanied the certified copy from the registry produced in this case, we are of the opinion, that the judge who presided at the trial committed no error, when he instructed the jury, wholly to disregard the copy, as evidence of the illegitimacy of Louisa Viall.

We do not think that the proof offered, on the part of the defendant, of the declaration of Ebenezer Smith, "that unless he made a will, Louisa could get nothing by law," points with certainty to her illegitimacy. It would be just as true if she had been fully advanced, as if she had been illegitimate. The meaning, however, of such an expression, depends so much upon the connection in which it is used, that it should have gone to the jury for them to judge, whether the speaker used it in the sense attributed to him by the defendant. The rejection of the proof precluded this right of the jury; and for this reason there must be a new trial of this case, — the costs to abide the event of the new trial.